See also *Perkins v. Madison County Livestock & Fair Ass'n,* 613 N.W.2d 264.

Debra L. PERKINS, Richard L. Wise, Linda R. Wise, Donald Haines, Paul R. Blythe, and Lori R. Blythe, Appellants,

v.

**BOARD OF SUPERVISORS OF MADISON COUNTY, Iowa, Appellee,**

and

Madison County Livestock & Fair Association, Intervenor–Appellee.

No. 99–0583.

Supreme Court of Iowa.

Nov. 15, 2001.

G. Stephen Walters of Jordan, Oliver & Walters, P.C., Winterset, for appellants.

Martin S. Ramsey, County Attorney, for appellee Board.

James L. Sayre of James L. Sayre, P.C., Clive, for intervenor.

STREIT, Justice.

Neighbors to the Madison County fairgrounds fear the wished-for figure-eight auto racing will amount to "insanity at its finest." [1] This case presents a challenge to the county government's allowing such races during the county fair by the Board of Supervisors exempting the fair from zoning. The appellants are all residents of Madison County, Iowa, and live near the racetrack in issue. The Madison County Board of Supervisors enacted Amendment No. 22 to the Madison County Zoning Ordinance (the "Ordinance") to exempt the Madison County fairgrounds run by the Madison County Livestock and Fair Association from the Ordinance for the five days of the fair. The appellants contend Amendment No. 22 should be struck down on several related constitutional grounds, as a violation of the Ordinance, and as an illegal delegation of power to the Association. We find the Madison County Board of Supervisors had authority to enact Amendment No. 22 and did not illegally delegate power to the Association. We also find Amendment No. 22 is valid spot zoning. It does not violate the Privileges and Immunities Clause and does not constitute a taking of private property. We

---

1. Darin Nelson & Son, *Figure 8 Races in Adel, Iowa; Dallas County Fairgrounds,* available at http://www.deziningwebz.com/figureeight/ (last visited October 23, 2001).

affirm the district court's denial of the petition for writ of certiorari.

## I. Factual and Procedural History

### A. Prior Litigation

In 1996 the Madison County Livestock and Fair Association constructed a racetrack to hold figure-eight races. The Association is an agricultural society under chapter 174 of the Iowa Code. Debra Perkins, Richard Wise, Linda Wise, Donald Haines, Paul Blythe, and Lori Blythe (all the foregoing, the "property owners") each resides near the Madison County Fairgrounds.

The property owners brought suit seeking to have the racetrack removed or to permanently enjoin figure-eight racing at the fairgrounds. The district court held the races were not a nuisance, but found the Association violated the zoning ordinances by not obtaining the necessary permit and variance for construction of the track. The court denied an award of damages to the property owners but enjoined the Association from holding figure-eight races until it obtained a special use permit and variance from the local zoning board. The Association appealed the injunction and the property owners cross-appealed arguing the court erred in finding the races were not a nuisance. The Iowa Supreme Court held: the owners and operators of the fairgrounds violated the zoning laws by constructing the racetrack; owners of property located farthest from the racetrack failed to establish the races unreasonably interfered with the use and enjoyment of their property as to constitute a nuisance; and the owner of the property nearest the racetrack established the races were a nuisance. *Perkins v. Madison County Livestock & Fair Ass'n,* 613 N.W.2d 264 (Iowa 2000) (*Perkins I*).

### B. Current Litigation

In an attempt to comply with the district court's ruling, the Association applied for a zoning certificate, but was denied. The Association also filed an application for a special use permit and variance. The Board of Adjustment granted the application for both the special use permit and variance to permit figure-eight racing. In response, the property owners filed a petition for writ of certiorari challenging the Board of Adjustment's issuance of the special use permit and variance. The parties entered a stipulated decree invalidating the issuance of the permit and variance because the Board of Adjustment failed to follow proper administrative procedure and make proper findings of fact.

The Board of Supervisors responded by passing Amendment No. 22 (the "amendment") to the Ordinance. The amendment exempts fairground property from the Ordinance during the five days of the fair. After written findings of fact were prepared, the Board of Adjustment issued a special use permit and variance to the Association. The property owners filed separate petitions for writ of certiorari challenging the legality of the amendment and the issuance of the special use permit and variance. The Association intervened in both actions. The district court sustained the writ with respect to the issuance of the special use permit, but denied the writ challenging the enactment of the amendment. It is from this action that the property owners currently appeal.

On appeal the Association and the Board of Supervisors filed a motion to dismiss claiming the appeal has been mooted by recently enacted legislation amending Iowa Code section 174.3 (1999). The property owners resisted and this court ruled the motion to dismiss would be submitted with the appeal.

## II. Standard of Review

■■■ "A writ of certiorari is proper under Iowa Rule of Civil Procedure 306 when one 'exercising judicial functions . . . is alleged to have . . . acted illegally.'" *Dressler v. Iowa Dep't of Transp.,* 542 N.W.2d 563, 564 (Iowa 1996) (quoting Iowa R. Civ. P. 306). Our review of a district court certiorari ruling is at law. Iowa R.App. P. 4; *see City of Grimes v. Polk County Bd. of Supervisors,* 495 N.W.2d 751, 752 (Iowa 1993). "An illegality is established if the board has not acted in accordance with a statute; if its decision was not supported by substantial evidence; or if its actions were unreasonable, arbitrary, or capricious." *Norland v. Worth County Compensation Bd.,* 323 N.W.2d 251, 253 (Iowa 1982). We are bound by findings of the trial court if they are supported by substantial evidence in the record. Iowa R.App. P. 14(f)(1); *Helmke v. Bd. of Adjustment,* 418 N.W.2d 346, 347 (Iowa 1988). Evidence is substantial when "a reasonable mind would accept it as adequate to reach a conclusion." *Hasselman v. Hasselman,* 596 N.W.2d 541, 545 (Iowa 1999) (quoting *Johnson v. Dodgen,* 451 N.W.2d 168, 171 (Iowa 1990)). Although our standard of review concerning certiorari actions is generally limited to errors at law, our review in this case is de novo as to the constitutional challenges raised. *Dressler,* 542 N.W.2d at 564–65.

## III. Ruling on Motion to Dismiss

■■■ The Board of Supervisors and the Association filed a motion to dismiss, arguing the issues on appeal are moot because of recently enacted legislation. Since this court directed the Association and Board of Supervisors to submit their joint motion to dismiss with the rest of the appeal, the motion to dismiss will be addressed at this time.

The Iowa General Assembly passed legislation amending Iowa Code section 174.3. Prior to the enactment of the amendment, section 174.3 provided as follows:

> During the time a fair is being held, no ordinance or resolution *of any city* shall in any way impair the authority of the society, but it shall have sole and exclusive control over and management of the fair.

(Emphasis added.)

Section 29 of House File 772 amended section 174.3 as follows:

> An ordinance or resolution *of a county or city* shall not in any way impair the authority of the society, but it shall have the sole and exclusive control over and management of such fair.

1999 Iowa Acts ch. 204, § 29 (emphasis added).

■■■ Questions can become moot by a change in the facts after the commencement of an action or by changes in the law after the suit is filed. A case is moot if it no longer presents a justiciable controversy because the issues involved are academic or nonexistent. *Iowa Bankers Ass'n v. Iowa Credit Union Dep't,* 335 N.W.2d 439, 442 (Iowa 1983). The key in assessing whether an appeal is moot is determining whether the opinion would be of force or effect in the underlying controversy. *See id.*

The Association and the Board of Supervisors filed a joint motion to dismiss on June 23, 1999. The motion dealt exclusively with the effect, if any, of the amendment to Iowa Code section 174.3. The amendment to Iowa Code section 174.3 became effective on July 1, 1999, after the motion was filed. Unlike Amendment No. 22, this amendment does not make specific reference to zoning ordinances. Furthermore, the July 1, 1999 amendment to Iowa Code section 174.3 does not go so far as to

declare laws like Amendment No. 22 have no force or effect. In the event the Iowa legislature rescinded the amendment to section 174.3, Amendment 22's validity would resurface. As such, the amendment to section 174.3 does not render the challenged Amendment void. Since Amendment No. 22 has not been repealed by the Board of Supervisors, the issues before us are not moot and the motion to dismiss is denied.

## IV. The Merits

On appeal, the property owners challenge the constitutionality of Amendment No. 22 on seven different grounds. As several of the issues are related, we will discuss some of them in combination. The property owners argue the amendment constitutes a taking of private property without just compensation and violates the Privileges and Immunities Clause of the Iowa Constitution. The property owners also assert the following related issues: (1) the amendment violates the requirements of uniformity and adherence to a comprehensive plan of Iowa Code sections 335.4 and 335.5, respectively; and (2) the amendment is effectively illegal spot zoning. Finally, the property owners challenge actions of the Board of Supervisors as otherwise illegal and as an unreasonable, arbitrary, or capricious exercise of the zoning power. As a corollary, they assert the Board of Supervisors illegally delegated legislative power to the Association. Taking this issue into consideration first, we now turn to the actions of the Board of Supervisors.

### A. Authority of the Board of Supervisors

█ Our legislature has given county boards of supervisors the authority over county zoning matters. Iowa Code §§ 335.3, 335.6. This authority includes the power to designate areas of the county into districts and to regulate the use of property within those districts. *See id.* §§ 335.3, 335.4. Iowa Code section 335.6 provides in part "[t]he board of supervisors shall provide for the manner in which the regulations and restrictions and the boundaries of the districts shall be determined, established, and enforced, and from time to time amended, supplemented, or changed." "In addition to the express powers granted by statute to the board of supervisors, many implied powers are authorized in order to properly perform its multiplicity of duties." *Bd. of Supervisors v. Standard Appliance Co.*, 249 Iowa 438, 441, 87 N.W.2d 459, 461 (1958).

The authority of the Board of Supervisors is not unlimited, but rather, there are procedural and substantive limitations on the actions the board may take. Under Iowa Code section 335.6, a county board of supervisors may not exercise powers granted to it by the legislature over zoning matters until the specified statutory procedural requirements are satisfied. Specifically, the board must publish notice of such action at least once, not less than four, and not more than twenty days before the date of the hearing, in one or more newspapers. Iowa Code §§ 618.14, 331.305. The public notice and hearing requirements apply equally to all zoning changes or amendments. *See id.* § 335.7. Substantively, the board of supervisors may not enact ordinances or amendments which are unreasonable, capricious, or inconsistent with the spirit or design of the zoning statutes. *Keller v. City of Council Bluffs*, 246 Iowa 202, 207–08, 66 N.W.2d 113, 116 (1954).

With these principles in mind, we now turn to the precise action taken by the Board of Supervisors. The Board of Supervisors voted to pass Amendment No. 22

to the Ordinance. In relevant part, Amendment No. 22 provides as follows:

H. Madison County Fair Exempt.

No regulation or ordinance adopted under the provisions of this Ordinance shall be construed to apply to that property owned by or under the control of the Madison County Fair and Livestock Association (MCLFA) designated as the "Fairgrounds," during the course of the five (5) consecutive days of what has traditionally been known as the "Madison County Fair." No Permit, Variance, or Exception shall be required from the Madison County Zoning Administrator, under any provision of this Ordinance, for any use, temporary building, structure, obstruction, parking lot, street, sign, or similar structure during the course of the "Madison County Fair" as set forth herein. However, any use taking place outside of the Five (5) consecutive days of what has traditionally been known as the "Madison County Fair" or any newly constructed permanent building, structure, obstruction, excavation, parking lot, street, sign or similar structure shall be subject to the provisions of the Madison County Zoning Ordinance.

■ As stated in *Keller,*

[t]he governing body of a municipality may amend its zoning ordinances any time it deems circumstances and conditions warrant such action, and such an amendment is valid if the procedural requirements of the statutes are followed and it is not unreasonable or capricious nor inconsistent with the spirit and design of the zoning statute.

*Id.* The Board of Supervisors was authorized to enact the Amendment under Iowa Code section 335.6. As discussed below, in enacting the Amendment, the Board of Supervisors acted within their scope of authority and in accordance with the applicable procedural and substantive requirements.

**B. Delegation of Power to the Association**

■ The property owners also assert the Board of Supervisors illegally delegated legislative authority to the Association. The Board of Supervisors serves a legislative function in that it "promulgates policies, standards, regulations, or rules of general application and prospective operation." *Bd. of Supervisors v. Dep't of Revenue,* 263 N.W.2d 227, 239 (Iowa 1978). "As the complexity of our society—and the government's role in it—have increased, the trend has been towards 'greater liberality in approving delegations of legislative authority.'" *Larsson v. Iowa Bd. of Parole,* 465 N.W.2d 272, 275 (Iowa 1991) (quoting *Dep't of Revenue,* 263 N.W.2d at 238).

■ The property owners seem not to contest the delegation of authority to the Association itself, but that such delegation is not accompanied by adequate procedural safeguards. In support of their argument, they gave numerous, extreme examples of the types of activities the amendment would allow. Before we examine the scope of the delegation, we must first look to the purpose of the delegation itself.

The goal of the Board of Supervisors in enacting the amendment was to grant the Association control and management over the five days of the fair. The amendment is not lacking in procedural safeguards, but it sets out general language to govern the Association. The amendment is designed to allow the Association to make findings and determinations appropriate to the peculiar circumstances of the fair. The general character of the amendment is necessary since it would be difficult, if not impossible, to foresee and delineate all circumstances in which the Association would

have authority to act. *See, e.g., Cyclone Sand & Gravel Co. v. Zoning Bd. of Adjustment,* 351 N.W.2d 778, 782 (Iowa 1984). Any greater specificity would defeat the Board of Supervisors' purpose of providing a flexible means to accomplish management of the fair. *See id.* The Board of Supervisors did not abdicate to the Association the right to legislate and the Association is not left with unbridled discretion, as the property owners contend. We will address the issue of the scope of the Association's authority below.

## C. The Effect of Amendment No. 22

The property owners assert several arguments with regard to the effect of the amendment. They challenge the amendment as a violation of the comprehensive plan and uniformity requirements of the Iowa Code and constitute illegal spot zoning. Finally, they argue the amendment is otherwise illegal and an unreasonable, capricious, and arbitrary exercise of the zoning power. We must first examine the function of the amendment.

 We start this discussion with the strong presumption of the validity of the ordinance and amendments thereto. *Kane v. City Council of Cedar Rapids,* 537 N.W.2d 718, 724 (Iowa 1995) (citing *Neuzil v. City of Iowa City,* 451 N.W.2d 159, 163 (Iowa 1990)). If the reasonableness of the amendment is fairly debatable, we will not substitute our judgment for that of the Board of Supervisors. *See id.* We will uphold the action of the Board of Supervisors if it is supported by competent and substantial evidence. *See id.* The court should not interfere with the zoning decisions of the Board of Supervisors unless there is a clear abuse of discretion. *See City of Grimes,* 495 N.W.2d at 753. The property owners, as challengers of the amendment, have the burden to show the amendment is arbitrary, capricious, and

discriminatory. *Quality Refrigerated Servs., Inc. v. City of Spencer,* 586 N.W.2d 202, 207 (Iowa 1998) (quoting *Shriver v. City of Okoboji,* 567 N.W.2d 397, 401 (Iowa 1997)).

 All of the property owners' arguments are based on the assumption the amendment is in fact a form of zoning. Zoning is the division of land into distinct districts and the regulation of certain uses and developments within those districts. The property owners further contend the amendment constitutes illegal spot zoning. Spot zoning is the creation of a small island of property with restrictions on its use different from those imposed on surrounding property. *Fox v. Polk County Bd. of Supervisors,* 569 N.W.2d 503, 508 (Iowa 1997) (quoting *Kane,* 537 N.W.2d at 723).

 The Board of Supervisors, by enacting the amendment, did create a district in the fairgrounds that is regulated in use of the property. The restrictions imposed on the fairgrounds are different from those restrictions imposed on the surrounding property. The amendment clearly exempts the Association from the Ordinance during the five days of the fair. During this limited time, the Association is not subject to any of the requirements of the Ordinance, including the requirements of uniformity and adherence to a comprehensive plan. The surrounding properties are not exempted from the Ordinance at any time. Therefore, the amendment constitutes spot zoning.

 However, not all spot zoning is illegal. *See Fox,* 569 N.W.2d at 508 (citing *Montgomery v. Bremer County Bd. of Supervisors,* 299 N.W.2d 687, 696 (Iowa 1980)). We have held "there must be substantial and reasonable grounds or basis for the discrimination when one lot or tract is singled out in an amendatory ordinance

removing therefrom restrictions imposed upon the remaining portions of the same zoning district." *Fox,* 569 N.W.2d at 509 (quoting *Keppy v. Ehlers,* 253 Iowa 1021, 1023, 115 N.W.2d 198, 200 (1962)). We determine if spot zoning is valid under a three prong test in which we consider: (1) whether the new zoning is germane to an object within the police power; (2) whether there is a reasonable basis for making a distinction between the spot zoned land and the surrounding property; and (3) whether the rezoning is consistent with the comprehensive plan. *Little v. Winborn,* 518 N.W.2d 384, 388 (Iowa 1994). Even though the district court determined the amendment was valid spot zoning considering all of the above factors, we find one specific factor determinative of this issue. Under the facts of this case, the applicable factor is whether there is a reasonable basis for making a distinction between the fairgrounds and the surrounding property.

■ "In determining whether there is a reasonable basis for spot zoning, we consider the size of the spot zoned, the uses of the surrounding property, the changing conditions of the area, the use to which the subject property has been put, and its suitability for various uses." *Kane,* 537 N.W.2d at 723 (quoting *Little,* 518 N.W.2d at 387). Of primary importance is whether the fairgrounds have a peculiar adaptability for the uses allowed by the amendment or is merely carved out of a similar tract equally suited to the restrictions of the amendment. *See Keppy,* 253 Iowa at 1023, 115 N.W.2d at 200.

■ We must decide each case based on its own peculiar facts. *Jaffe v. City of Davenport,* 179 N.W.2d 554, 556 (Iowa 1970). We now turn to the specific circumstances of the fairgrounds to determine whether there is a reasonable basis for treating the fairgrounds differently from the surrounding property. The As-sociation took title to the fairgrounds property in 1948 and has been in continual possession of the property since this time. Madison County passed the first zoning ordinance in 1964. Since that time the Board of Supervisors passed other ordinances prior to enacting the current zoning ordinance. The Ordinance went into effect in 1969 and continues to be the applicable zoning ordinance, including amendments thereto, for Madison County. The fairgrounds were in existence and operating as a fair for over six years before the first ordinance and for over ten years before the current Ordinance was enacted. Fair activities and events existed before the time the Madison County ordinance went into effect and have continued to exist without legal abandonment since that time.

The fairground property has been dedicated to the purposes of the Madison County fair for almost half a century. Since the early 1950's there has been an arena at the fairgrounds. The twenty acres of fairground property also includes grandstands, parking, and various buildings constituting a typical county fairground. Various activities have taken place over the years at the fair, including rodeos, tractor pulls, demolition derbies, and three and four-wheeler races. More recently, figure-eight track racing events have taken place. People come to the fairgrounds not only during the traditional fair week, but year round to enjoy the activities held at the fairgrounds. There is a unique dedication of the fairground property because of the various uses and activities that have taken place there for nearly fifty years.

The fairgrounds have been and continue to be well-suited to serve the purposes of holding the Madison County fair and related events. *See Jaffe,* 179 N.W.2d at 558. The majority of the fairgrounds is zoned

agricultural, while a small area is zoned residential. The portion of the fairgrounds where the racetrack is located has always been zoned agricultural. In contrast, none of the property owners' real estate has ever been used for the purposes of a fair or any other similar event. No rodeos, tractor pulls, demolition derbies, or three and four-wheeler races have ever taken place on the property owners' land. Rather, their property is zoned exclusively for residential purposes. Therefore, the surrounding property is not similar in all respects of use, character, and adaptability to the fairgrounds area. *See id.* Given the character and use of the fairgrounds property, it was reasonable for the Board of Supervisors to enact an amendment to the Ordinance enabling the Association to control and manage other suitable fair-time activities and events.

■■■ The property owners also argue the amendment is invalid because it is not consistent with the Madison County comprehensive zoning plan. However, the "spirit of a zoning ordinance is not violated, nor inconsistent with a comprehensive zoning ordinance by granting a just and reasonable exception to the amendment based upon the character and use of property not similar to other property in the district...." *Keller,* 246 Iowa at 210, 66 N.W.2d at 118. The use of the fairgrounds and the character of the property is now and was distinguishable before the adoption of the first zoning ordinance in 1964. *See id.* The figure-eight race track events are an extension of prior nonconforming arena events at the Madison County fair. There is a reasonable basis for treating the fairgrounds differently from the surrounding property based on the character of the fairgrounds and its suitability to fair-time events. Consequently, the amendment does not violate the comprehensive zoning plan.

In conclusion, the amendment does constitute spot zoning. However, the property owners have failed to show the Board of Supervisors acted unreasonably, arbitrarily, or capriciously in enacting the amendment. We conclude the Board of Supervisors decision to enact the amendment was supported by substantial evidence and is not unreasonable, arbitrary, or capricious or characterized by an abuse of discretion. The board's action was consistent with the character, use, and adaptability of the fairgrounds property to fair-time events. Because the reasonableness of the amendment is fairly debatable, we will not substitute our judgment for that of the Board of Supervisors. We also conclude the district court correctly applied the law in reaching its conclusion. There was substantial evidence for the trial court to conclude a reasonable basis existed to treat the fairgrounds differently from the surrounding property. Because the Board of Supervisors' action was supported by substantial evidence and not arbitrary or capricious, the district court correctly denied the property owners' petition for writ of certiorari. We affirm.

### D. Taking

■■■ The property owners also allege the amendment constitutes a taking of private property by the government without just compensation in violation of both the Iowa and federal constitutions. The Fifth Amendment of the United States Constitution guarantees private property shall not "be taken for public use, without just compensation." *Cf.* Iowa Const. art. I, § 18. Citizens of the United States are further guaranteed no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV; Iowa Const. art. I, § 9. The guarantees are "designed to bar Government from forcing some people alone to

bear public burdens which, in all fairness and justice, should be borne by the public as a whole...." *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554, 1561 (1960). We have treated the issue of whether governmental action amounts to an unconstitutional taking on a case-by-case basis. *Iowa Coal Mining Co., Inc. v. Monroe County*, 494 N.W.2d 664, 670 (Iowa 1993). The test "is essentially one of reasonableness." *Id.* (quoting *Stone v. City of Wilton*, 331 N.W.2d 398, 404 (Iowa 1983)).

As a general matter, the Constitution guards only against inappropriate state action. *See, e.g.*, U.S. Const. art. I, § 10. Specifically, our takings jurisprudence demands consideration of whether *government* action substantially interferes with an owner's use and enjoyment of his or her property. The issue then becomes whether the action of the Association in conducting figure-eight racing constitutes governmental action.

■ The Association is an agricultural society pursuant to chapter 174 of the Iowa Code. As such, it is a separate corporate entity neither owned, nor operated by the municipality of Madison County. Iowa Code § 174.1 (1997). The Association is incorporated under the laws of the State of Iowa for the purpose of holding the Madison County fair. *See id.* It has been the owner of the real property of the fairgrounds since 1948. Given these facts, the Association is not a governmental body.

■ The real action the property owners complain of is at the direction of the Association, not Madison County. In fact, Madison County in enacting the amendment has essentially taken no action in the matter of determining the activities to take place during the fair. Given these facts, it is possible to conclude that such exemption of the fairgrounds from the Ordinance can-

not constitute state action. However, this ignores the reality of the actions of the local zoning board. Though on its face the amendment is not a racing law, the Board of Supervisors in enacting the amendment has effectively permitted the Association to conduct figure-eight racing. In doing so, the action of the Board of Supervisors constituted government action. The issue then becomes whether this activity rises to the level of a compensable taking.

■ The original concept of governmental taking contemplated only physical appropriations of property. Today, however, the term also encompasses some governmental action that significantly damages property or impairs its use. *See, e.g., United States v. Causby*, 328 U.S. 256, 261–62, 66 S.Ct. 1062, 1066, 90 L.Ed. 1206, 1210–11 (1946) (frequent flyovers by airplanes near airport constituted a taking of private property). Government action that neither prevents the best use of an owner's land, nor extinguishes a fundamental attribute of ownership does not constitute a taking. *Causby*, 328 U.S. at 262, 66 S.Ct. at 1066, 90 L.Ed. at 1210; *Kaiser Aetna v. United States*, 444 U.S. 164, 179–180, 100 S.Ct. 383, 393, 62 L.Ed.2d 332, 346 (1979). The government may be required to compensate a property owner if its action: (1) involves a permanent physical invasion of the property; or (2) denies the owner all economically beneficial or productive use of the land. *Shriver*, 567 N.W.2d at 404 (quoting *Hunziker v. State*, 519 N.W.2d 367, 370 (Iowa 1994)). We must consider the degree of harm to the surrounding property posed by the activities permitted under the amendment. *See, e.g., Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1030, 112 S.Ct. 2886, 2901, 120 L.Ed.2d 798, 822 (1992) (citing Restatement (Second) of Torts §§ 826, 827 (1977)).

The character of the intrusion determines whether a taking has occurred. *Schaller v. State*, 537 N.W.2d 738, 743 (Iowa 1995) (citing *Phelps v. Bd. of Supervisors*, 211 N.W.2d 274, 277 (Iowa 1973)). The United States Supreme Court has found government action constitutes a taking of private property when the nature of the intrusion was severe. This is not a case where the government's action resulted in the complete destruction of the owner's property. *See, e.g., Armstrong*, 364 U.S. at 40, 80 S.Ct. at 1563, 4 L.Ed.2d at 1554. Nor is this a case where the government action makes an owner's property "wholly useless." *Hudson County Water Co. v. McCarter*, 209 U.S. 349, 355, 28 S.Ct. 529, 531, 52 L.Ed. 828, 832 (1908). Similarly, we do not have before us a case where the government went beyond mere destruction of the property, but appropriated the property for its own use. *Causby*, 328 U.S. at 262, 66 S.Ct. at 1066, 90 L.Ed. at 1210–11. The severity in this case does not rise to the level of United States military installations' repeated flooding of a property owner's land. *United States v. Cress*, 243 U.S. 316, 327, 37 S.Ct. 380, 385, 61 L.Ed. 746, 753 (1917).

In contending the Association has "taken" their property, the property owners essentially urge us to find government action having any effect, even nominal, on citizens' private property must be accompanied by just compensation for it to be found constitutional. In *Perkins I*, we found the figure-eight track racing constituted a nuisance as to Debra Perkins, but not to the other property owners. However, a finding of nuisance does not demand a determination the government action constitutes a taking.

In this case, as to all of the property owners, we conclude the Association's actions pursuant to the amendment do not rise to the level of a compensable taking of private property. None of the property owners have been denied all use of their property. *See Kempf v. City of Iowa City*, 402 N.W.2d 393, 401 (Iowa 1987) (quoting *Keller*, 246 Iowa at 210, 66 N.W.2d at 118) ("if the only reasonable use of the property is seriously affected by the zoning ordinance, the owner should be entitled to relief . . ."). The fundamental attributes of property ownership have not been compromised. *See Causby*, 328 U.S. at 262, 66 S.Ct. at 1066, 90 L.Ed. at 1210. The record does not demonstrate the property owners will be deprived of productive use of their land; they can continue to use their· property as a residence despite the two days of the fair when the Association conducts figure-eight track racing. Finally, the two days of races the property owners challenge can hardly constitute a permanent invasion of their respective properties. *See Shriver*, 567 N.W.2d at 404 (quoting *Hunziker*, 519 N.W.2d at 370). We conclude no compensable taking has occurred as a matter of law.

### E. Privileges and Immunities

The property owners also argue the amendment constitutes a violation of the Privileges and Immunities Clause of article I, section 6 of the Iowa Constitution. This article provides that:

> [a]ll laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens.

Under this provision, the legislature must not act arbitrarily when it classifies citizens. *John R. Grubb, Inc. v. Iowa Hous. Fin. Auth.*, 255 N.W.2d 89, 95 (Iowa 1977). "One who challenges [a] statute on this constitutional ground must negate every conceivable basis which may support the classification, and the classification must

be sustained unless it is patently arbitrary and bears no relationship to a legitimate governmental interest." *Id.; accord Utilicorp United Inc. v. Iowa Utils. Bd.*, 570 N.W.2d 451, 455 (Iowa 1997) (citing *Lunday v. Vogelmann*, 213 N.W.2d 904, 907 (Iowa 1973), overruled on other grounds in *Miller v. Boone County Hosp.*, 394 N.W.2d 776 (Iowa 1986)). The burden is not upon the Association and the Board of Supervisors to prove the amendment is constitutional. The property owners have the burden to demonstrate beyond a reasonable doubt the amendment violates the Privileges and Immunities Clause and to point out with particularity the details of the alleged invalidity. Every reasonable doubt is resolved in favor of constitutionality. *Avery v. Peterson*, 243 N.W.2d 630, 633 (Iowa 1976).

The purpose of the Privileges and Immunities Clause is to prevent the state from denying its citizens the privileges and immunities of national citizenship. Article I, section 6 of the Iowa Constitution specifically provides:

the general assembly shall not grant to any *citizen*, or class of citizens, privileges and immunities, which, upon the same terms shall not equally belong to all citizens.

(Emphasis added.)

The clause makes clear people are afforded protection from arbitrary governmental action. *See, e.g., State v. Mann*, 602 N.W.2d 785 (Iowa 1999) (treatment of older juveniles in adult court versus treatment of older juveniles in juvenile court); *Sanford v. Manternach*, 601 N.W.2d (Iowa 1999) (treatment of inmates); *Bierkamp v. Rogers*, 293 N.W.2d 577 (Iowa 1980) (treatment of paying versus non-paying guests in automobiles); *City of Waterloo v. Selden*, 251 N.W.2d 506 (Iowa 1977) (treatment of cities with more than 750 population); *Collins v. State Bd. of Social Welfare*, 248 Iowa 369, 81 N.W.2d 4 (1957) (treatment of children living in home versus children living with designated relatives other than mother and father).

We must determine whether the amendment creates a classification of people who have been singled out for different treatment. If we find the amendment creates such a class, then we must determine whether the classification is arbitrary and bears no rational relationship to a legitimate governmental interest. *See John R. Grubb*, 255 N.W.2d at 95; *accord Utilicorp United Inc.*, 570 N.W.2d at 455 (citing *Lunday*, 213 N.W.2d at 907).

In the determination of whether the amendment classifies people, we must look to the content of the amendment itself as it is controlling. In relevant part, the amendment provides:

No regulation or ordinance adopted under the provisions of this Ordinance shall be construed to apply to that *property* owned by or under the control of the Madison County Livestock and Fair Association (MCLFA) designated as the "Fairgrounds". . . .

(Emphasis added.)

On its face, the amendment exempts the property, not the Association, from the Ordinance. However, in effect, the amendment classifies certain property owners differently than others. The amendment exempts the Association from the Ordinance during the five days of the fair. The Association is exempted from all of the requirements of the Ordinance during this time. The property owners are not similarly exempted from the Ordinance at any time. Since the amendment demonstrates the existence of a distinct class of persons singled out for different treatment, we must now determine whether the classification is arbitrary or bears no rational relationship to a legitimate governmental interest. *See John R. Grubb*, 255 N.W.2d at 95. The property owners have

the burden to negate every reasonable basis that may support the classification. *See Bruns v. State*, 503 N.W.2d 607, 610 (Iowa 1993); *John R. Grubb*, 255 N.W.2d at 95.

▮▮▮▮▮ We test a challenge under the Privileges and Immunities Clause by the traditional equal protection analysis. *Utilicorp United Inc.*, 570 N.W.2d at 455 (citing *In re Chicago, Milwaukee, St. Paul & Pac. R.R.*, 334 N.W.2d 290, 294 (Iowa 1983)). Because this case does not involve a suspect class or a fundamental right, any classification made by the amendment need only have a rational basis. *State v. Cronkhite*, 613 N.W.2d 664, 668 (Iowa 2000) (citing *In re C.P.*, 569 N.W.2d 810, 812–13 (Iowa 1997)). We have found the Privileges and Immunities Clause of the state constitution will not defeat a statutory scheme simply because it benefits certain individuals or classes more than others. *Train Unlimited Corp. v. Iowa Ry. Fin. Auth.*, 362 N.W.2d 489, 495 (Iowa 1985) (it is sufficient if the statutory scheme operates equally upon those persons or classes of persons intended to be benefited as a result of a valid legislative finding of need); *see John R. Grubb*, 255 N.W.2d at 96 (fact that Act primarily benefits investors, builders, and tenants does not violate Privileges and Immunities Clause because it is sufficient if an enactment applies to all members of a class, providing the classification is not purely arbitrary but rests upon a reasonable basis).

▮▮▮▮ This analysis is similar to our spot zoning analysis above. In concluding the amendment is valid spot zoning, we determined there was a reasonable basis for making a distinction between the spot-zoned land and the surrounding property. Similarly, here we find the classification of property owners is not arbitrary for purposes of the challenge under the Privileges and Immunities Clause.

The surrounding residential property is not suited for the purposes of a fair or similar event. In contrast, the fairgrounds property has been the location of the Madison County fair and related events for over fifty years. Grandstands, parking, and various fairground-related buildings are located on the property. Rodeos, tractor pulls, demolition derbies, and three and four-wheeler races have taken place at the fairgrounds during the last fifty years. People continue to come to the fairgrounds all year long to take part in activities held there. The fair activities and events existed six years before the first Madison County zoning ordinance even went into effect and have continued to take place since that time. In contrast, the surrounding property is used strictly for residential purposes. The nature of the zoning in the surrounding property has not changed from residential since 1964. Consequently, it cannot be said the fairgrounds property is merely carved out of surrounding property equally suited to the purposes of the fair. Because the surrounding property is not similar in all respects of use, character, and adaptability to the fairgrounds area, we find the classification is not arbitrary.

In conclusion, the property owners have failed to show their properties are similarly situated to the fairgrounds property. Accordingly, we need not address whether the amendment bears a rational relationship to a legitimate government interest. Therefore, we conclude the classification of property owners not similarly situated does not violate the Privileges and Immunities Clause. Accordingly, we affirm the district court's denial of the property owners' petition for writ of certiorari.

**AFFIRMED.**