## IN THE COURT OF APPEALS OF IOWA

No. 3-1122 / 13-0775
Filed February 5, 2014


**RICKIE ALLEN SUITER and DARLENE MARIE SUITER,**
        Plaintiffs-Appellants,

**vs.**

**THE CITY COUNCIL OF THE CITY OF PRINCETON, IOWA,**
        Defendant-Appellee.
_____


        Appeal from the Iowa District Court for Scott County, Marlita A. Greve, Judge.


        The plaintiffs appeal from the district court's ruling entering summary judgment in favor of the defendant.  **AFFIRMED.**



        John T. Flynn of Brubaker, Flynn & Darland, P.C., Davenport, for appellants.

        Michael C. Walker and Samuel R. Bailey of Hopkins & Huebner, P.C., Davenport, for appellee.



        Heard by Potterfield, P.J., and Doyle and Bower, JJ.

**DOYLE, J.**

Rick and Darlene Suiter appeal from the district court's ruling entering summary judgment in favor of the City Council of the City of Princeton ("the City") on their petition for writ of certiorari, in which the Suiters claimed certain action of the City was illegal. We affirm.

### I.    *Background Facts and Proceedings*

The Suiters own riverfront property in Princeton. Their property is bounded on the east by the Mississippi River and on the west by South River Drive, a north-south street. At issue in this appeal is the City's action concerning a parcel of "undeveloped green space" that abuts the Suiters' property to the north. This parcel is also bounded on the east by the Mississippi River and on the west by South River Drive.[1] The parcel is zoned "R-1 Single Family Residential." A rudimentary survey[2] of the property is shown below:

---

[1] Vine Street is an east-west street located to the west of River Drive. The parcel is located in what would be Vine Street if Vine Street were extended eastward to the Mississippi River.

[2] This survey was submitted to the district court as exhibit 26. We have altered it slightly to omit several geographical references irrelevant for our purposes.



VINE STREET (50')

RIVER DRIVE

N 88° 48' 25" E 52.62'

Public park
(disputed property)

MISSISSIPPI RIVER

S 90° 00' 00" W 65.00'

Suiters' property

PREPARED FOR:
RICK SUITER
1005 SOUTH RIVER DRIVE
PRINCETON, IOWA 52768

LEGEND:
DEED DIMENSION = (0.0')
FIELD DIMENSION = 0.0'
MONUMENTS FOUND = O
MONUMENTS SET #4 REBARS
CAPPED "PLS 10897" = ●

1 inch = 30 ft.

C & L LAND SURVEYING
811 W. 46TH STREET
DAVENPORT, IOWA 52806
PHONE NO. (319) 386-6729, FAX (319) 386-1960

JOB NUMBER 06-00-644
06-01-00

N

There is some history between the Suiters and the City, and this is not the first time these parties have appeared before this court in litigation over the disputed property. In *Suiter v. City of Princeton*, No. 01-1314, 2003 WL 1785903, at *1 (Iowa Ct. App. Apr. 4, 2003), we laid out the following factual background:

> The Suiters purchased their tract of property in 1994. Rick Suiter testified that he knew since 1994 that he did not have a deed conveying to him title to the real estate running all the way up to the southern boundary of Dawson's property. The Suiters, Dawson, and other neighbors used the disputed tract. In 1992 the City

considered the disputed tract for potential use as a small park. In early to mid-2000 the City again discussed turning the disputed tract into a public park. The City then put up an orange barricade on the disputed tract.

The Suiters filed a petition for quiet title of real estate and requested a temporary injunction. The trial court ruled in favor of the City and quieted title to the disputed tract in the City. The trial court ruled that (1) the disputed tract is not subject to the public trust doctrine, (2) the doctrine of acquiescence is not applicable, (3) the Suiters have shown no affirmative actions by the City indicating an intent to abandon the disputed property, and (4) the Suiters failed to present clear and convincing evidence to establish their claim to the disputed property by equitable estoppel.

In that appeal, we addressed the Suiters' claims that the district court erred in:

(1) failing to find that the City has acquiesced in their claim to the property and is estopped from dispossessing them from the property and failing to quiet title in them, (2) failing to grant them an injunction prohibiting the City from dispossessing them from the disputed property, and (3) quieting title to the disputed tract in the City.

*Id.* at *1. We affirmed the district court. *Id.* at *4.

In September 2012, the City adopted Resolution No. 2012-20, declaring the disputed property "shall from this day forward be used as a public park and/or green space in accordance with the permitted use under the R-1 zoning district."

The Suiters filed a petition for writ of certiorari, claiming the City's action in adopting Resolution No. 2012-20 was illegal.[3] The City filed a motion for summary judgment, alleging there was no genuine issue of material fact and that it was entitled to judgment as a matter of law. Following a hearing, the district court granted the City's motion for summary judgment, finding the City's passage

---

[3] Although the Suiters initiated this proceeding again claiming ownership of the disputed property, they have since abandoned that aspect of their claim. We find it prudent to acknowledge the morphing nature of the Suiters' claims throughout the instant proceeding, and observe their allegations seem, at times, to be conflicting.

of Resolution No. 2012-20 was proper.  The Suiters appeal.  Additional facts will be discussed below.

## II.      Standard of Review

We review the district court's grant of summary judgment for correction of errors at law.  *See Sallee v. Stewart*, 827 N.W.2d 128, 132 (Iowa 2013).  A party is entitled to summary judgment when the record shows no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. *See* Iowa R. Civ. P. 1.981(3).  The burden is on the moving party to demonstrate it is entitled to judgment as a matter of law, and we view the evidence in the light most favorable to the nonmoving party.  *See Sallee*, 827 N.W.2d at 132.

## III.     Nature of Resolution No. 2012-12

The Suiters raise a number of claims on appeal, the bulk of which relate to their contention that the City acted illegally in adopting Resolution No. 2012-20, which they characterize as an "ordinance" that constituted a change to the zoning map and comprehensive plan of the City.   The district court, however, determined Resolution No. 2012-20 was a "resolution."  Because the nature of Resolution No. 2012-20 is dispositive to many of the Suiters' claims, we begin with that issue.

A resolution is defined as "a council statement of policy or a council order for action to be taken," whereas an ordinance is defined as "a city law of a general and permanent nature."  Iowa Code §§ 362.2(21), 362.2(16) (2011).  In comparison, "[a] 'resolution' is something less formal than an 'ordinance,' and, generally speaking, is a mere expression of the opinion or mind of the council concerning some matter of administration coming within its official cognizance."

*Sawyer v. Lorenzen & Weise*, 127 N.W. 1091, 1093 (Iowa 1910). In other words, a resolution addresses matters of the city's administration, but an ordinance addresses the city's legislative obligations.[4] *See id.*; *compare Bryan v. City of Des Moines*, 261 N.W.2d 685, 687 (Iowa 1978) (setting educational requirements for police officers via resolution); and *Murphy v. Gilman*, 214 N.W. 679, 681 (Iowa 1927) (fixing wages of firefighters via resolution and reciting other examples of city action via enactment of resolutions, including: purchasing fire department apparatus, constructing a sewer, accepting a dedication, fixing the amount of a license fee previously authorized to be imposed, and ordering street improvements), *with Hanna v. Rathje*, 171 N.W.2d 876, 879 (Iowa 1969) (changing zoning of property via ordinance); *City of Des Moines v. Fowler*, 255 N.W. 880, 883 (Iowa 1934) (upholding ordinance requiring permit from the City's health department to sell milk); and *G.W. Mart & Son v. City of Grinnell*, 187 N.W. 471, 472 (Iowa 1922) (upholding ordinance requiring licenses for certain businesses).

Prior to these proceedings, the City adopted a comprehensive plan designating land uses for City property. The disputed property was zoned "R-1 Single Family Residential," or low density residential. The City's zoning ordinance allows for public or private parks in R-1 residential zoning districts.

---

[4] For example, the Iowa Supreme Court has explained:

> The establishment of a fire department is doubtless a legislative act, and such as is required to be by ordinance. It is legislation of a permanent character. But the fixing of the compensation to be paid its members is a matter of administrative exercise of a power. What is a proper compensation may depend upon many changing conditions, which have to be met from time to time, and may properly be provided for in a less permanent way than by ordinance.

*Murphy v. Gilman*, 214 N.W. 679, 681 (Iowa 1927).

Specifically, article XII, section 12.3(A)(2) of the City's zoning ordinance includes the following "permitted use" for "R-1 Single Family Residential" zoned property:

> *Public or private parks*, playgrounds, golf courses, and other outdoor recreational facilities which are commonly, but not necessarily, operated on a non-profit basis: however, amusement parks, golf-driving ranges, golf miniature putting courses, normally operated for profit and imploring manufactured or constructed facilities of an unnatural or non-environmental design shall be excluded.

(Emphasis added). Further, "Map 4.2a" in the record, entitled "Proposed Land Use," depicts the property as reserved for "Park/Recreation."

In September 2012, pursuant to its authority under the zoning ordinance, the City adopted Resolution 2012-20 designating the disputed property as a pocket park.

Under this record, we find no error in the court's determination that "when the City passed Resolution No. 2012-20 to designate the [disputed] property as a pocket park, it was performing an administrative act, not carrying out a legislative function." As the district court explained:

> Since there was no change to the zoning of this property, there also was no change to the City's comprehensive plan. A comprehensive plan is simply a tool to administer the zoning ordinance. The court finds there are no disputed material facts on this issue. Since there was no zoning change or amendment, passage of Resolution 2012-20 to designate [the disputed] property as a pocket park was proper.

The Suiters claim the district court erred in failing to find: (1) the City's passage of Resolution 2012-20 "was illegal and null and void" because the City "failed to comply with Iowa Code section 414.4 and section 362J and City of Princeton Zoning Ordinance section 6.1" by failing "to first publish notice of a public hearing and to hold a public hearing on the proposed reclassification of the

permitted use before adopting Resolution 2012-20," (2) the City "acted illegally when it failed to follow the procedures required for passage of an amendment to a zoning ordinance under Iowa Code section 380.3 when it reclassified the permitted use of the 'disputed property,'" (3) the City's passage of Resolution 2012-20 "was illegal because the City failed to obtain the review and recommendation of the Planning and Zoning Commission on the proposed reclassification as required by City of Princeton Code section 21.05(3) and City of Princeton Zoning Ordinance section 6.1," and (4) the City's passage of Resolution 2012-20 "was an illegal grant of a special use permit to the City of Princeton to change the permitted use of the 'disputed property' from residential to a park."

Upon our review, we observe the statutory and municipal provisions cited in these claims apply to ordinances. As the district court acknowledged, the Suiters' claims only potentially hold muster if Resolution No. 2012-20 was an ordinance. *See, e.g., Bryan*, 261 N.W.2d at 687 ("Notice and publication requirements applicable to ordinances do not extend to resolutions."). Because the district court concluded Resolution No. 2012-20 was a resolution, however, it determined the Suiters' "presumption" otherwise was "a fatal flaw" in their claims.[5]

We find no error in the court's conclusion that based on the undisputed facts in the record the City was not subject to statutory or municipal requirements governing passage of ordinances when it adopted Resolution No. 2012-20. *See*

---

[5] The Suiters do not contend the City followed an improper procedure for passing a resolution.

*id.* ("Plaintiffs allege resolution 5561 is invalid because its subject matter is appropriate only for an ordinance. . . . The authority of a city council to make administrative decisions by resolution is well established."). We affirm on these issues.[6]

## V.    *Genuine Issues of Material Fact*

The Suiters claim the court erred in failing to find the existence of factual issues as to whether: (1) the City's adoption of Resolution No. 2012-20 was a "reclassification of the permitted use of the 'disputed property,'" (2) Resolution No. 2012-20 was a "vacation" "of the public street known as Vine Street," and (3) their procedural due process rights were violated when the City changed the permitted use of the disputed property without "notice of a public hearing and a public hearing."

As discussed above, the undisputed facts in the record reveal the disputed property was, and continues to be, zoned R-1 residential. A public park is a

---

[6] Even assuming for the sake of argument that Resolution No. 2012-20 was an ordinance, the Suiters have offered no evidence to generate an issue of material fact as to whether the City abused its discretion in changing the zoning of the disputed property, and that the City's abuse of discretion was "arbitrary, capricious, or discriminatory." *See Perkins v. Bd. of Supervisors of Madison Cnty.*, 636 N.W.2d 58, 67 (Iowa 2001) (observing the "strong presumption" of validity of City "ordinances and amendments thereto"); *Collis v. Bd. of Park Comm'rs of City of Clinton*, 38 N.W.2d 635, 637 (Iowa 1949) ("With no showing of fraud, arbitrary action, or abuse of power, the city's action in diverting from levee to park will not be reviewed."). In examining city action taken in a case of "spot zoning," the Iowa Supreme Court observed:

> If the reasonableness of the amendment is fairly debatable, we will not substitute our judgment for that of the Board of Supervisors. We will uphold the action of the Board of Supervisors if it is supported by competent and substantial evidence. The court should not interfere with the zoning decisions of the Board of Supervisors *unless there is a clear abuse of discretion.* The property owners, as challengers of the amendment, *have the burden to show the amendment is arbitrary, capricious, and discriminatory.*

*Perkins*, 636 N.W.2d at 67 (emphasis added). This summary judgment record is a far cry from that which would generate a fact issue to support a claim that the City's action in this case was illegal.

permitted use for R-1 residential property pursuant to the City's zoning ordinance. The disputed property was not, by the Suiters' own admission, used as a street.[7] Finally, the Suiters admitted Rick Suiter attended the City Council's meeting on September 13, 2012, when the proposed resolution was discussed.[8] The summary judgment record, viewed in the light most favorable to the Suiters, reveals no genuine issue of material fact that would support the Suiters' claims that the disputed property was reclassified or vacated, or that the City's designation of the disputed property constituted a violation of their due process rights.

## VI. Conclusion

Upon consideration of all issues raised on appeal, whether or not specifically addressed in this opinion, we find no error in the district court's determination that no genuine issues of material fact exist on the Suiters' claims and the City is entitled to summary judgment as a matter of law. Accordingly, we affirm the court's entry of summary judgment in favor of the City.

**AFFIRMED.**

---

[7] In their responses to the City's statement of uncontested facts, the Suiters alleged they "use [the disputed] property for access to the Mississippi River and for other personal use and [they] maintain and keep said property free and clear of debris from the Mississippi River and mow said property regularly to keep the grass and weeds trimmed." The Suiters further alleged in their resistance to the City's motion for summary judgment, "Plaintiffs use [the disputed] property for quiet and private river front recreational purposes. . . . There is no parking available at this location for any public use of the park . . . ."

[8] Moreover, the Suiters provided no affidavits or proof that use of the disputed property as a park would affect their rights or the public's rights. *See Collis*, 38 N.W.2d at 637 (observing "the plaintiff made no allegation of private damage or that any private rights were invaded by the diversion of the entire plot from a levee to a park").