# IN THE COURT OF APPEALS OF IOWA

No. 14-0765
Filed April 22, 2015

**SUSAN MILLER,**
        Petitioner-Appellant,

**vs.**

**GRUNDY COUNTY BOARD OF SUPERVISORS,**
**GRUNDY CENTER IOWA,**
        Respondent-Appellee,

**and**

**MID AMERICAN ENERGY COMPANY,**
        Intervenor-Appellee.
_____

Appeal from the Iowa District Court for Grundy County, Joel A. Dalrymple,

Judge.

The petitioner appeals from the district court order annulling a writ of

certiorari.  **AFFIRMED.**

Ethan D. Epley of Stumme & Epley Law Office, P.L.L.C., Denver, for

appellant.

Kirby D. Schmidt, County Attorney, for appellee board.

Christopher P. Jannes and Tara Zager Hall of Davis, Brown, Koehn, Shors

& Roberts, Des Moines, for intervenor-appellee.

Considered by Danilson, C.J., Potterfield, J., and Miller, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MILLER, S.J.**

Susan Miller appeals from the district court order annulling a writ of certiorari that alleged the Grundy County Board of Supervisors acted improperly in amending a zoning ordinance. She contends the board acted illegally because it failed to conduct a study before rezoning the land. She also contends two of the supervisors who voted in favor of the amendment had a conflict of interest that required recusal from the matter. Finding no error, we affirm the district court's order annulling the writ of certiorari.

**I. BACKGROUND FACTS AND PROCEEDINGS.**

On August 29, 2013, MidAmerican Energy Company (MidAmerican) filed a request with the Grundy County Board of Supervisors, seeking to amend the county zoning ordinance to rezone approximately 1200 acres from an A-1 Agricultural District to an A-2 Agricultural District. Wellsburg Wind Energy, LLC (Wellsburg) had obtained certain "Wind Farm Option Agreements." These agreements had been assigned to and assumed by MidAmerican Energy Company (MidAmerican) on May 24, 2013. The rezoning sought by MidAmerican would allow MidAmerican to place larger wind turbines on the land than the wind turbines that would be permitted in an A-1 Agricultural District. The Grundy County Planning and Zoning Commission voted 6-1 against amending the ordinance at its September 17, 2013 meeting.

The Grundy Country Board of Supervisors set the matter for a public hearing on September 30, 2013. Following the hearing, the board voted 4-0 to approve the proposed amendment and rezone the property.[1]

On October 30, 2013, Miller filed a petition for a writ of certiorari with the district court, alleging the board acted improperly in approving the amendment.[2] Trial without a jury was held on April 2, 2014. At the close of Miller's case, the board and MidAmerican moved to dismiss the action. The district court granted the motion and annulled the writ.

## II. SCOPE AND STANDARD OF REVIEW.

We review a district court's certiorari ruling for correction of errors at law. *Perkins v. Bd. of Sup'rs*, 636 N.W.2d 58, 64 (Iowa 2001). We are bound by the district court's fact findings if they are supported by substantial record evidence. *Id.* Evidence is substantial if a reasonable mind would accept it as adequate to reach the same conclusion. *Id.* If the question of the board's reasonableness is open to a fair difference of opinion, the court may not substitute its decision for that of the board. *Carruthers v. Bd. of Sup'rs*, 646 N.W.2d 867, 869 (Iowa 2002).

A motion to dismiss made during trial to the court without a jury is equivalent to a motion for directed verdict. *Iowa Coal Mining Co. v. Monroe Cnty.*, 555 N.W.2d 418, 438 (Iowa 1996). Our scope of review on such a motion is for correction of errors of law. *Summy v. City of Des Moines*, 708 N.W.2d 333, 343 (Iowa 2006); *Heinz v. Heinz*, 653 N.W.2d 334, 338 (Iowa 2002). We

---

[1] One of the supervisors recused himself for a conflict of interest.
[2] MidAmerican intervened in the action.

consider the evidence in the light most favorable to the non-moving party, here Miller. *See Heinz*, 653 N.W.2d at 338.

Iowa Rule of Civil Procedure 1.1401 provides: "A party may commence a certiorari action when authorized by statute or when the party claims an inferior tribunal, board, or officer, exercising judicial functions, or a judicial magistrate exceeded proper jurisdiction or otherwise acted illegally." "An illegality is established if the board has not acted in accordance with a statute; if its decision was not supported by substantial evidence; or if its actions were unreasonable, arbitrary, or capricious." *Norland v. Worth Cnty. Comp. Bd.*, 323 N.W.2d 251, 253 (Iowa 1982).

## III. STATUTORY COMPLIANCE.

Miller first contends the board acted illegally because it failed to comply with the requirements of Iowa Code section 352.6 (2013). Specifically, she argues that rezoning the land was impermissible under subsection 3 of the statute, which states:

> The county board of supervisors may permit any use not listed in subsection 2[3] in an agricultural area only if it finds all of the following:
> a. The use is not inconsistent with the purposes set forth in section 352.1.
> b. The use does not interfere seriously with farm operations within the area.
> c. The use does not materially alter the stability of the overall land use pattern in the area.

---

[3] Subsection 2 lists the following permitted uses: residences constructed for occupation by a person engaged in farming or in a family farming operation, or property of a telephone company, city utility, public utility, or pipeline company. Iowa Code § 352.6(2).

Iowa Code § 352.6(3).  Miller argues the board acted illegally by failing to make the findings required under section 352.6(3).  Her argument presumes section 352.6 applies to the A-1 Agricultural District land involved in the challenged zoning amendment.

Iowa Code section 352.2(1), defining an "agricultural area," states: "'Agricultural area' means an area meeting the qualifications of section 352.6 and designated under section 352.7."  Summarily stated, section 352.6(1) provides in relevant part that owners of farmland may submit to the county board of supervisors proposals to create or expand an agricultural area within the county, land cannot be included in an agricultural area without the consent of the owner, and agricultural areas may be created in a county that has adopted zoning ordinances.  Section 352.7 provides the procedures through which the board of supervisors may create or expand an agricultural area.

There is no evidence in the record that the Grundy County Board of Supervisors has ever designated any of the land involved in the zoning amendment as an "agricultural area."  Nor, for that matter, is there any evidence in the record that any owner of any of that land has ever consented to the owner's land being included in an area designated as an "agricultural area," a section 352.6 requirement for land to be included.

Although the land involved in the zoning amendment was zoned as an "A-1 Agricultural District" by the county zoning ordinance, such zoning does not of itself create or expand an "agricultural area" as defined in section 352.2(1).

One stated intent of chapter 352 is to "preserve the availability and use of agricultural land for agricultural production, through processes that emphasize the participation of citizens and local government." Iowa Code § 352.1. Section 352.1 further provides, in part: "It is the intent of the general assembly to provide local citizens and local governments the means by which agricultural land may be protected from nonagricultural development pressures." *Id.* One of the stated means is "establishment of agricultural areas." *Id.* However, the Grundy County "Development Ordinance," which includes the county's zoning provisions, recognizes that "it may not be possible for the county to preserve all of the valuable soils." Rather than promote a "zero growth" policy or a policy of no development on agricultural land, the ordinance allows development on "highly productive agricultural soils" when consistent with the ordinance and the county's comprehensive plan. Section IX of the county ordinance lists twenty-three uses permitted in an "A-1 Agricultural District," many of which go far beyond the uses allowed by section 352.6(2) in an "agricultural area." Permitting such uses is inconsistent with the stated purpose of section 352.1, and is therefore inconsistent with the creation of agricultural areas. *See id.* § 352.6(3)(a) (allowing the board of supervisors to permit in an agricultural area a use not listed in section 352.6(2) only if, in addition to other criteria, the use is not inconsistent with the purposes set forth in section 352.1).

Land in an A-1 Agricultural District does not automatically become an "agricultural area." The land involved in the zoning amendment has not been designated as an "agricultural area" by the board of supervisors. The provisions

of section 352.6 are therefore not applicable. We agree with the district court that the board was not required to make the findings listed in section 352.6(3) before voting to rezone the land to A-2 Agricultural District.

## IV. CONFLICT OF INTEREST.

Miller also contends the board acted improperly because two of the voting supervisors had a conflict of interest that required their recusal. The general law governing conflicts of interest of public officers and employees is set forth in Iowa Code section 68B.2A. *See T&K Roofing Co. v. Iowa Dep't of Ed.*, 593 N.W.2d 159, 162 (Iowa 1999). It prohibits public officers from engaging in outside employment or an activity that involves receipt of money from a person for performing an act that the officer would be required or expected to perform as part of the officer's regular duties. Iowa Code § 68B.2A(1)(b). Proof of a conflict of interest must be "'direct, definite, capable of demonstration, not remote, uncertain, contingent, unsubstantial, or merely speculative or theoretical.'" *Bluffs Dev. Co., Inc. v. Bd. of Adjustment of Pottawattamie Cnty.*, 499 N.W.2d 12, 15 (Iowa 1993) (quoting 1 Am. Jur. 2d *Adminstrative Law* § 64, at 861 (1962)).

Miller first alleges Supervisor Barb Smith was required to recuse herself because she is one of the owners of the AmericInn, which offered discounted rates to wind energy officials who stayed there. Because the rezoning would allow larger wind turbines to be built on the property in question, she alleges the influx of wind officials and construction workers staying in the area would benefit AmericInn and Smith.

The evidence fails to support Miller's claim Smith had a conflict of interest that required recusal.  Apart from her testimony regarding the discounts, Miller was unable to offer evidence that any discounts received by wind energy officials were different than discounts available to anyone else staying at the AmericInn.  Without evidence Smith treated the wind energy officials differently than other similarly situated customers or that her decision to vote for the amendment to rezone the land was significantly influenced by a pecuniary interest, Miller's claim fails.  *See id*. at 17 (noting insufficient evidence of a conflict of interest where the evidence was "tenuous at best" and there lacked evidence board members "were significantly influenced by any pecuniary interest").  We agree with the district court that Smith had no disqualifying conflict of interest.

Miller also argues Supervisor James Ross had a conflict of interest stemming from his alleged interest in land subject to wind-energy options or easements.  More specifically, Miller argues a conflict of interest exists because Ross is the owner of land subject to a wind farm option agreement, and some of Ross's relatives own land subject to wind farm easement agreements and Ross is a tenant on the land owned by the relatives.  The land subject to such agreements consists of four tracts.

The first tract is owned by Joe and Ina Ross, Ross's uncle and aunt.  It is subject to a 2009 "Wind Farm Option Agreement" between the owners and Wellsburg.  This agreement is one of those assigned to and assumed by MidAmerican on May 24, 2013.  It is not, however, one of the tracts involved in the 2013 rezoning, and there is no evidence that any other land that Joe and Ina

Ross might own is involved in the rezoning. Any advantage to Ross as a result of participating in and voting for the 2013 rezoning is uncertain, speculative, and remote. We agree with the district court that Ross's relationship to this tract and its owners presented no disqualifying conflict of interest.

The second and third tracts are owned by Ross's parents, Homer and Delores Ross. Each tract is subject to a 2010 "Wind Farm Easement Agreement" between the owners and Ivester Wind Energy, LLC (Ivester).[4] These two agreements are not part of the May 24, 2013 assignment and assumption agreement between Wellsburg and MidAmerican. Nor is either of these two tracts involved in the 2013 rezoning. Any advantage to Ross as a result of participating in and voting for the 2013 rezoning is also uncertain, speculative, and remote. We agree with the district court that Ross's relationship to these tracts and their owners presented no disqualifying conflict of interest.

The fourth tract is owned by Etta Moats, Ross, and Ross's wife, Pamela. It is subject to a 2010 "Wind Farm Easement Agreement" between the owners and Ivester. Just as with the second and third tracts, this agreement is not part of the May 24, 2013 assignment and assumption agreement, and this tract is not involved in the 2013 rezoning. Any advantage to Ross from participating in and voting for the 2013 rezoning is therefore also uncertain, speculative, and remote. We agree with the district court that Ross's relationship to this tract, relationship

---

[4] Ross did sign each of these two agreements, but only as the holder of a power of attorney for his mother, Delores. A "William A. Ross" also signed as a holder of a power of attorney for Delores.

to the other owners, and partial ownership of this tract, presented no disqualifying conflict of interest.

## V. CONCLUSIONS AND DISPOSITION.

The district court did not err in holding that the board of supervisors was not required to make the findings listed in Iowa Code section 352.6(3) before rezoning land from A-1 Agricultural District to A-2 Agricultural District. The court did not err in concluding that neither Smith nor Ross had a disqualifying conflict of interest. We therefore affirm the court's order annulling the writ of certiorari.

**AFFIRMED.**