Alan KANE, Charles Edwards, Lora Lea Edwards, Mark Hanrahan, and Ann Dorr, Appellants,

Charles Schillig, Robert Schillig, and Gary Schillig, Plaintiffs,

v.

The CITY COUNCIL OF the CITY OF CEDAR RAPIDS, Larry Serbousek, Wayne Murdock, Lyle Hanson, J.D. Smith, and David Kramer, in Their Official Capacities as Members of the City Council of the City of Cedar Rapids, and the Board of Adjustment of the City of Cedar Rapids, James Sattler, David McManus, Joan Koontz, and Michael Flynn, in Their Official Capacities as Members of the Board of Adjustment for the City of Cedar Rapids, Appellees.

No. 94–932.

Supreme Court of Iowa.

Sept. 20, 1995.

Deborah J. Hughes and Alfred E. Willett of Irvine & Robbins, Cedar Rapids, for appellants.

Mohammad H. Sheronick, City Attorney, Cedar Rapids, for appellees.

Considered by HARRIS, P.J., and LARSON, SNELL, ANDREASEN, and TERNUS, JJ.

ANDREASEN, Justice.

This is an action by surrounding property owners challenging the approval by the Cedar Rapids City Council (council) of a revised site development plan for a condominium project. They claim that approval of the plan did not receive the statutory required three-fourth majority vote of the council and that the approval constituted illegal spot zoning. The surrounding property owners appeal from the district court ruling upholding the council's action and the validity of challenged municipal code provisions. We affirm.

I. *Background.*

At the request of a developer, Robert Yaw, a property known as 2025–2035 First Avenue S.E. was rezoned by city ordinance in 1979 from an R–1, single-family residence district, to an R–6, multiple-family residence district. The rezoned property was surrounded by residential homes and the Brucemore historic site. A site development plan was also approved which permitted the construction of a condominium with access on First Avenue. The Yaw condominium project was not constructed.

In 1987 a church sought approval of a site development plan on the premises which would permit construction of a church building. By resolution the council repealed the Yaw condominium site plan and approved the church revised site development plan. The church project was not constructed.

On August 20, 1992, Leo Peiffer, an architect, submitted a revised site development plan which would permit the construction of twin six-story condominium towers on the premises. The plan also included the development of an access road over an adjacent

residential lot with access on Cottage Grove Avenue. This R–1 lot was purchased shortly before Peiffer submitted the revised site development plan. A condominium was located across the street from the Peiffer project and the area across First Avenue and Cottage Grove Avenue S.E. was zoned R–5.

The council referred the request to the city planning commission. At the city planning meeting interested persons were heard. Objections and concerns were expressed by letter and by those in attendance. The commission also received memorandum and recommendations from the city engineer, the fire department, and the city traffic engineer. The city planning commission recommended the council approve the proposed site plan, with access on Cottage Grove Avenue, subject to securing a legal opinion which concurred with the building department's interpretation that an R–1 lot can be used as access to an R–6 lot. After the recommendation was submitted, the city attorney filed with the council an opinion agreeing with the department's interpretation.

The council set consideration of the Peiffer revised site development plan for public hearing. At the hearing the council received a written protest to the Peiffer plan signed by over fifty residents. Later, the council imposed additional conditions upon the developer relating to the access driveway. The city traffic engineer continued to express his preference that the condominium development access on Cottage Grove Avenue rather than First Avenue.

On October 21 the council approved by resolution the Peiffer revised site development plan by a vote of three to two. The surrounding property owners appealed to the city board of adjustment claiming the board had jurisdiction to hear appeals of an administrative decision. The appeal was dismissed by the board of adjustment. The surrounding owners then challenged the council's action by filing a petition for writ of certiorari and for declaratory judgment in district court.

The case was tried to the court. The court entered a declaratory judgment that the city had complied with all procedural requirements in approving the Peiffer revised site development plan and that the city zoning ordinance provision allowing the use of a residential district lot for vehicle access to another residentially zoned lot was valid facially and as applied.

Five surrounding homeowners appealed the court's judgment. On appeal they urge (1) the council is required to have four votes to approve by ordinance the Peiffer revised site development plan under Iowa Code section 414.5 (1991), (2) the approval of the site plan that incorporated the R–1 lot constitutes impermissible de facto spot zoning, and (3) the zoning ordinance provision allowing an R–6 lot to access over an R–1 lot is invalid on its face and as applied in that it permits spot zoning.

## II. *Scope of Review.*

■ This combined certiorari-declaratory judgment action was filed as a law action. However, the parties do not dispute the case was tried in equity. Our review is de novo. Iowa R.App.P. 4; *Ernst v. Johnson County,* 522 N.W.2d 599, 602 (Iowa 1994).

## III. *Super Majority Vote Requirement.*

■ The governing body of a city, the council, may amend its zoning ordinances at any time it deems circumstances justify such action, and such an amendment is valid if statutory procedural requirements are followed, and the amendment is not unreasonable or capricious, nor inconsistent with the spirit of the zoning statute. *Keller v. City of Council Bluffs,* 246 Iowa 202, 207–08, 66 N.W.2d 113, 116–17 (1954). There is a strong presumption of legality when reviewing city zoning ordinances, and if the validity of the classification for zoning purposes is fairly debatable, the council's judgment must be allowed to control. *Brackett v. City of Des Moines,* 246 Iowa 249, 260, 67 N.W.2d 542, 547 (1954). An amendment to a city zoning ordinance requires the new ordinance be in accordance with the city's comprehensive plan, that it be considered after notice at a public hearing, and that the ordinance be read on three different days. Iowa Code §§ 380.3, 414.3, .4. The reclassification of the Yaw property in 1979 from single-family

to multiple-family residence district was accomplished by the adoption of an ordinance. The validity of this reclassification is not challenged.

The surrounding property owners make two procedural challenges to the council's action. They urge approval of a revised site development plan requires both the favorable vote of at least three-fourths of all council members and the approval be accomplished by adoption of an ordinance, not merely a resolution.

At the time of the reclassification of the property Iowa law provided:

Such regulations, restrictions, and boundaries may, from time to time, be amended, supplemented, changed, modified, or repealed. In case, however, of a protest against such change signed by the owners of twenty percent or more either of the area of the lots included in such proposed change, or of those immediately adjacent in the rear thereof extending the depth of one lot or not to exceed two hundred feet therefrom, or of those directly opposite thereto, extending the depth of one lot or not to exceed two hundred feet from the street frontage of such opposite lots, such amendment shall not become effective except by the favorable vote of at least three-fourths of all the members of the council.

Iowa Code § 414.5 (1979).

In 1984 the provisions of section 414.5 were amended to clarify the eligibility of property owners to protest and to require that the written protest be filed with the city clerk. 1984 Iowa Acts ch. 1176, § 1. The statute was further amended in 1985. Added to the statute, as the second and third sentence, was the following:

Notwithstanding section 414.2, as a part of an ordinance changing land from one zoning district to another zoning district or an ordinance approving a site development plan, a council may impose conditions on a property owner which are in addition to existing regulations if the additional conditions have been agreed to in writing by the property owner before the public hearing required under this section or any adjournment of the hearing. The conditions must be reasonable and imposed to satisfy public needs which are directly caused by the requested change.

1985 Iowa Acts ch. 9, § 2.

The surrounding property owners urge the addition of "or an ordinance approving a site development plan" was intended to require a site development plan to be approved by ordinance. The city argues the legislative purpose was stated by the legislature as "an act authorizing a city or county to impose additional conditions upon property owners as a condition to zoning changes." The district court concluded the city's procedure for approval of a revised site development plan does not require the adoption of an ordinance. We agree.

■ The approval of a site development plan is not rezoning. The site development plan is a map showing the configuration of the property, the location and dimensions of the proposed buildings, landscape data, engineering data and other factual information relating to the intended development of the property. The site plan allows the city to assure compliance with the city zoning regulations and other various city codes and regulations.

■ Generally, a city may exercise any power not inconsistent with state law. *See* Iowa Code § 364.2 (1991); *City of Clinton v. Sheridan*, 530 N.W.2d 690, 693 (Iowa 1995). A city council exercises its power "by the passage of a motion, a resolution, an amendment, or an ordinance." Iowa Code § 364.3(1). An ordinance "means a city law of a general and permanent nature." *Id.* § 362.2(18). In contrast a resolution or motion "means a council statement of policy or a council order for action to be taken." *Id.* § 362.2(20). Administrative decisions of a city council may be made by resolution. *Bryan v. City of Des Moines*, 261 N.W.2d 685, 687 (Iowa 1978). The city's code provides the council may approve, approve with modification, or disapprove a revised site development plan by resolution after recommendation from the city planning commission. This process is a part of the mechanics for enforcing the city's zoning code; it is an administrative device whereby the city exercises oversight and control.

Although the 1979 original Yaw site development plan and rezoning request was submitted to the city and approved and adopted by city ordinance, the repeal of the site development plan and the approval of the revised plan submitted by the church was by council resolution. When a site development plan is not submitted with a request to rezone the property, council approval by resolution is sufficient.

The city has authority to establish zoning districts and to regulate and restrict construction and the use of building structures and land. Iowa Code §§ 414.1, .2. Prior to the 1985 amendment, the statute required a super majority vote of the council before amendment of regulations, restrictions, and boundaries of the zoning ordinance if a protest was filed. The 1985 amendment included the additional language "or an ordinance approving a site development plan." By its plain language, this phrase applies only to an *ordinance* that approved a site development plan. The city's provisions allowing approval of a revised site development plan by resolution can be harmonized with Iowa Code section 414.5. We conclude that Iowa Code section 414.5 does not require a three-fourths, super majority, of the members of the council to approve the revised site plan.

## IV. *Spot Zoning.*

The surrounding homeowners argue that the council's approval of the Peiffer revised site development plan and the city's ordinance allowing an R–1 lot to be used for access to the condominium constituted illegal spot zoning.

We first discussed spot zoning in *Keller* where we stated:

Action of imposing restrictions that do not bear alike on all persons living in the *same territory under similar conditions and circumstances* is discriminatory and will not be upheld.

"Spot zoning" when construed to mean reclassification of one or more *like tracts* or *similar lots* for a use prohibited by the original zoning ordinance and out of harmony therewith is illegal.

*Keller*, 246 Iowa at 213, 66 N.W.2d at 120 (citations omitted).

We recently stated:

"Spot zoning results when a zoning ordinance creates a small island of property with restrictions on its use different from those imposed on the surrounding property." Spot zoning is not automatically invalid. If it is germane to an object within the police power and there is a reasonable basis to treat the spot-zoned property differently from the surrounding property, the spot zoning is valid.

In determining whether there is a reasonable basis for spot zoning, we consider the size of the spot zoned, the uses of the surrounding property, the changing conditions of the area, the use to which the subject property has been put and its suitability and adaptability for various uses.

*Little v. Winborn*, 518 N.W.2d 384, 387 (Iowa 1994) (citations omitted).

We agree with the trial court that the approval of the revised site development plan did not constitute illegal spot zoning. The approval of the plan did not give the developer any special privileges. The use of the R–1 lot for access was permitted under the city's zoning ordinance and available to all residential property owners. The council's action was not arbitrary, capricious, or discriminatory. The approval of the revised site development plan did not constitute a reclassification of either the R–1 lot or the R–6 lot.

The city zoning ordinance contains a restriction on the use of a residential lot for access to adjacent property. The ordinance provided:

No part of any lot located in a R district shall be used for vehicular access purposes to any other property which is located in any district other than an A or R district, or to any other property being used for a purpose not allowed in an A or R district as a permitted or conditional use, unless the access is approved as a conditional use by the Board of Adjustment.

The surrounding owners claim this ordinance is invalid on its face or as applied in this case because it permits illegal spot zoning. By permitting the R–1 lot to be used as an

access, they argue the lot is no longer single-family residential property. As a result, the R–1 lot has the benefits and privileges of an R–6 lot.

The clear intent of the restricted use of a residential lot is to prohibit the use of a residential lot as access to any zoning district other than a residential or agricultural lot and it is intended to permit a lot located in a residential district to be used to access an adjacent residential lot. There is a strong presumption of validity of a city ordinance, including any amendments to it. *Neuzil v. City of Iowa City,* 451 N.W.2d 159, 163 (Iowa 1990). Courts reviewing zoning ordinances should not substitute their judgment as to the propriety of the city's action when the reasonableness of the ordinance or its amendment is fairly debatable. *Id.* at 166. All residential property owners were subject to the same restriction on use of a residential lot for access purposes. We conclude, as did the trial court, that the ordinance is justified and a valid exercise of the city's police powers.

**AFFIRMED.**