# IN THE COURT OF APPEALS OF IOWA

No. 23-0142
Filed February 7, 2024

**SHAD BALTIMORE,**
    Plaintiff-Appellant,

**vs.**

**DALLAS COUNTY, and ALTERNATE ROUTE PROPERTIES, LLC,**
    Defendants-Appellees.
_____

Appeal from the Iowa District Court for Dallas County, Terry Rickers, Judge.


Shad Baltimore appeals the district court decision finding the Dallas County Board of Supervisors did not act illegally by rezoning a portion of the property owned by Alternate Route Properties, LLC from agricultural to light industrial. **AFFIRMED.**


Billy J. Mallory and Trevor A. Jordison of Mallory Law, West Des Moines, for appellant.

Hugh Cain (until withdrawal), Brent L. Hinders, and Eric M. Updegraff of Hopkins & Huebner, P.C., Des Moines, for appellee Dallas County.

Kristina Stanger and Logan Eliasen of Nyemaster Goode, P.C., Des Moines, for appellee Alternate Route Properties, LLC.


Heard by Schumacher, P.J., and Ahlers and Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

Shad Baltimore appeals the district court decision finding the Dallas County Board of Supervisors (Board) did not act illegally by rezoning a portion of the property owned by Alternate Route Properties, LLC (Alternate Route) from agricultural to light industrial. We find the Board was not required to amend the Dallas County Comprehensive Plan, the Board's decision was consistent with the Comprehensive Plan, the Board did not engage in illegal spot zoning, and the Board acted reasonably. We affirm the district court.

## I.     Background Facts & Proceedings

This case involves a parcel of about 2.5 acres of land in Dallas County. The property abuts a county highway. In 1970, the property was owned by John Penick. He sought to have the property rezoned from agricultural to industrial for the purpose of manufacturing concrete products. The Board approved Penick's request but specified there should be a 150-foot agricultural buffer around the perimeter of the property.[1]

In 2021, Penick sold the property to Alternate Route, which intended to operate a commercial landscaping business at that location. Alternate Route filed a request with the Dallas County Planning and Zoning Commission (Commission) asking to have the entire property rezoned to an industrial classification, thereby eliminating the 150-foot agricultural buffer. Alternate Route installed a six-foot privacy fence between its property and that of Baltimore.

---

[1] The Board did not specify what activities were allowed or not allowed within the agricultural buffer area. There was no evidence the agricultural buffer was ever implemented while Penick owned the property.

Baltimore objected to the rezoning request. He noted that several properties in the area were zoned residential. Baltimore stated the proposed rezoning did not comply with the Dallas County Comprehensive Plan and constituted illegal spot zoning. Despite these objections, the Commission recommended approval of the rezoning. It found the 150-foot agricultural buffer area was "excessive and does little to minimize adverse impacts."

The matter proceeded to a public hearing before the Board on November 30. After one of the Board members stated that he needed more time to review the materials, the Board continued discussion of the rezoning until the January 11, 2022 meeting. At the January meeting, the Board found the rezoning of the property was consistent with the Comprehensive Plan and approved the petition to make the entire parcel light industrial.

Baltimore filed a petition for writ of certiorari, claiming that the Board's decision was illegal, arbitrary, and capricious and that it was not supported by substantial evidence. He asserted the Board failed to comply with the Comprehensive Plan and engaged in illegal spot zoning. The Board resisted the petition. Alternate Route joined in the Board's brief.

The district court concluded the Board's decision was supported by substantial evidence; was not illegal, arbitrary, or capricious; and was not an abuse of discretion. The court dismissed the petition for writ of certiorari. The court found:

> Baltimore has not met his burden to show the County's rezoning decision was unreasonably [sic], arbitrary, capricious, or discriminatory. Reasonable minds, when presented with the [Alternate Route] Property's previous uses and classification and the [Comprehensive Plan], could conclude that the County did not illegally spot-zone the [Alternate Route] Property. As such, the Court

shall not substitute its decision for that of the Board's and Baltimore's Writ of Certiorari must be denied on this ground.

Baltimore appeals the district court's decision.

## II.     Standard of Review

Baltimore filed a petition for writ of certiorari, claiming the Board's action was illegal.  *See* Iowa Rule of Civil Procedure 1.1401.  "An inferior tribunal commits an illegality if the decision violates a statute, is not supported by substantial evidence, or is unreasonable, arbitrary, or capricious."  *Bowman v. City of Des Moines Mun. Hous. Agency*, 805 N.W.2d 790, 796 (Iowa 2011).  In a certiorari action, "[t]he plaintiff bears the burden to prove the illegality."  *Nash Finch Co. v. City Council of City of Cedar Rapids*, 672 N.W.2d 822, 825 (Iowa 2003).

We review a district court's ruling on a petition for writ of certiorari for the correction of errors at law.  *Burroughs v. City of Davenport Zoning Bd. of Adjustment*, 912 N.W.2d 473, 478 (Iowa 2018).  "We are bound by the district court's findings if supported by substantial evidence."  *Baker v. Bd. of Adjustment of City of Johnston*, 671 N.W.2d 405, 414 (Iowa 2003).  "However, we are not bound by erroneous legal rulings that materially affect the court's decision."  *Id.*

## III.     Dallas County Comprehensive Plan

**A.**     Baltimore contends the Board could not approve the rezoning of Alternate Route's property without amending the Dallas County Comprehensive Plan.  Iowa Code section 335.5(4) (2021) provides that a comprehensive plan may be adopted by a county board of supervisors following a public hearing.  County zoning "regulations shall be made in accordance with a comprehensive plan."  Iowa Code § 335.5(1).

In *Smith v. City of Fort Dodge*, two property owners requested to have their properties rezoned to permit multiple family dwellings from a zone that allowed only single family dwellings. 160 N.W.2d 492, 494 (Iowa 1968). The neighboring landowners claimed the requested zoning change was a substantial change to the comprehensive plan, requiring the council to go through the process to amend the comprehensive plan.[2] *Id.* at 495. The court found the procedural requirements to amend the comprehensive plan "related only to major changes in the comprehensive plan" and the present circumstances "did not amount to such a change." *Id.* at 497. The court found amendment of the comprehensive plan was required for "general modification of the zoning districts or regulations in that law, not isolated, minor, or individual changes." *Id.* The court concluded the rezoning did not require the amendment of the comprehensive plan. *Id.* at 498.

We conclude Baltimore has not shown the rezoning of Alternate Route's individual property to eliminate the 150-foot agricultural buffer is a change that would require amendment of the Dallas County Comprehensive Plan.

**B.** Baltimore also claims that rezoning Alternate Route's property to eliminate the 150-foot agricultural buffer is not consistent with the Comprehensive Plan. As noted, county zoning regulations are required to be consistent with a county's comprehensive plan. *See* Iowa Code § 335.5(1). Where there is a comprehensive plan, zoning decisions should be made "to promote the goals of

---

[2] This process was found in Iowa Code section 373.20 (1966), which provided "no substantial amendment" of a comprehensive plan could be made without referring the matter to the city plan commission or by a vote of the city council. Section 373.20 was repealed in 1972. *See* 1972 Acts, ch. 1088, § 199. Now amendments to a comprehensive plan may be made following notice and a public hearing. *See* Iowa Code § 335.5(4) (2021).

that individualized plan." *Webb v. Giltner*, 468 N.W.2d 838, 841 (Iowa Ct. App. 1991).

> A comprehensive plan is
>
> a "comprehensive, long-term general plan" for the physical development of the community, [which] embodies information, judgments, and objectives collected and formulated by experts to serve as both a guiding and predictive force. Based on comprehensive surveys and analysis of existing social, economic, and physical conditions in the community and of the factors which generate them, the plan directs attention to the goals selected by the community from the various alternatives propounded and clarified by planning experts, and delimits the means (within available resources) for arriving at these objectives . . . .

*Velie Outdoor Advert. of Sioux City, Inc. v. Sioux City*, 252 N.W.2d 408, 410–11 (Iowa 1977) (alterations in original) (quoting Charles M. Haar, *In Accordance with a Comprehensive Plan*, 68 Harv. L. Rev. 1154, 1155 (1955) (footnote omitted)).

The purpose of a comprehensive plan is to avoid "piecemeal and haphazard zoning." *Wolf v. City of Ely*, 493 N.W.2d 846, 849 (Iowa 1992). "The comprehensive plan requirement is intended to ensure the county board acts rationally rather than arbitrarily in exercising their delegated zoning authority." *Id.*

"The party challenging a zoning decision on the basis that it was not made in accordance with the city's comprehensive plan carries a heavy burden that requires the party to counter the 'strong presumption of validity accorded zoning decisions.'" *Residential & Agric. Advisory Comm., LLC v. Dyersville City Council*, 888 N.W.2d 24, 44 (Iowa 2016) (citation omitted); *see also Dettman v. Clayton Cnty. Bd. of Supervisors*, No. 04-1629, 2005 WL 1630826, at *4 (Iowa Ct. App. July 13, 2005) (finding the appellants had a heavy burden to show the Board of Supervisors acted in an arbitrary or capricious manner in determining an urban

renewal plan conformed to a comprehensive plan). "[C]ompliance with the comprehensive plan requirement merely means that zoning authorities have given full consideration to the problem presented, including the needs of the public, changing conditions, and the similarity of other land in the same area." *Residential & Agric. Advisory Comm.*, 888 N.W.2d at 45 (citation omitted).

The Board gave full consideration to Alternate Route's request to rezone the property and the objections to their request by holding a public hearing and allowing members of the public to voice their opinions. The Comprehensive Plan states, "Flexibility in implementing the Comprehensive Plan requires balancing the concepts of the plan with the realities of the growth and change."

One of the goals in the Comprehensive Plan provides, "Encourage development and infill . . . within existing Industrial and Commercial lands." The elimination of the 150-foot agricultural barrier can be considered infill where the remainder of the parcel has been zoned light industrial since 1970. Baltimore has not shown the Board acted in an arbitrary or capricious manner or abused its discretion by deciding to rezone Alternate Route's property to eliminate the 150-foot agricultural buffer, so the entire property is zoned light industrial. We conclude there is substantial evidence in the record to support the district court's decision that the Board acted consistently with the Comprehensive Plan.

## IV.  Spot Zoning

Baltimore alleges the Board engaged in illegal spot zoning. "'Spot zoning' when construed to mean reclassification of one or more *like tracts* or *similar lots* for a use prohibited by the original zoning ordinance and out of harmony therewith is illegal." *Kane v. City Council of City of Cedar Rapids*, 537 N.W.2d 718, 723

(Iowa 1995) (quoting *Keller v. City of Council Bluffs*, 66 N.W.2d 113, 120 (Iowa 1954)). "Spot zoning results when a zoning ordinance creates a small island of property with restrictions on its use different from those imposed on the surrounding property." *Little v. Winborn*, 518 N.W.2d 384, 387 (Iowa 1994).

Spot zoning is not necessarily illegal. *Perkins v. Bd. of Supervisors of Madison Cnty.*, 636 N.W.2d 58, 67 (Iowa 2001). To determine if spot zoning is valid, the court considers "(1) whether the new zoning is germane to an object within the police power; (2) whether there is a reasonable basis for making a distinction between the spot zoned land and the surrounding property; and (3) whether the rezoning is consistent with the comprehensive plan." *Id.* at 68. Each case is determined "based on its own peculiar facts." *Id.*

Spot zoning arises when like or similar tracts of land are treated differently. *Kane*, 537 N.W.2d at 723.

> It is within a council's power and authority, however, to decide whether or not the property so designated is similar in character and use to that of surrounding property, and when a sufficient showing has been made to reasonably support its judgment, such discretion may not be superseded by the court's different conclusion.

*Keller*, 66 N.W.2d at 116. "Courts reviewing zoning ordinances should not substitute their judgment as to the propriety of the city's action when the reasonableness of the ordinance or its amendment is fairly debatable." *Kane*, 537 N.W.2d at 724.

The district court determined:

> In contrast, the County argues a portion of the [Alternate Route] Property was already zoned as I-1 light industrial since 1970. The County claims expansion of the light industrial classification to the entire parcel did not create a small island of property, as a light industrial classification previously existed. Rather, the Board's

rezoning decision merely *expanded* an existing use of industrial property.  Thus, even if the original action in the 1970s was spot zoning, the Board's rezoning in 2022 could not be the creation of an island because it was adjacent to an existing industrial use.  This Court agrees and finds that Baltimore's writ must be denied on this ground.

In discussing spot zoning, we have stated:

> If the reasonableness of the amendment is fairly debatable, we will not substitute our judgment for that of the Board of Supervisors.  We will uphold the action of the Board of Supervisors if it is supported by competent and substantial evidence.  The court should not interfere with the zoning decisions of the Board of Supervisors *unless there is a clear abuse of discretion.*  The property owners, as challengers of the amendment, *have the burden to show the amendment is arbitrary, capricious, and discriminatory.*

*Suiter v. City Council of City of Princeton*, No. 13-0775, 2014 WL 468017, at *4 n.6 (Iowa Ct. App. Feb. 5, 2014) (quoting *Perkins*, 636 N.W.2d at 67).

The reasonableness of the Board's decision was fairly debatable, as it was supported by competent and substantial evidence.  *See id.*  The rezoning of the 150-foot agricultural barrier to light industrial did not create a small island of property with a use different than that of surrounding property.  *See Little*, 518 N.W.2d at 387.  The majority of the property had been zoned light industrial since 1970, and the rezoned area was attached to this light industrial area.  For this reason, we do not substitute our judgment for that of the Board.  *See Perkins*, 636 N.W.2d at 67.

### V.    Rezoning

Finally, Baltimore contends the district court improperly determined the Board's decision to rezone the 150-foot agricultural barrier was reasonable and supported by substantial evidence.  He claims that the same factors that led to the requirement to have the agricultural barrier are still present and there was

insufficient evidence to support a finding that the agricultural barrier should be eliminated. Baltimore asserts that the zoning change benefits only Alternate Route and not the surrounding property owners.

Similarly to our discussion of spot zoning, the Board's decision will be upheld if it is supported by competent and substantial evidence. *Perkins*, 636 N.W.2d at 67. If the reasonableness of the Board's decision is fairly debatable, we do not substitute our judgment for that of the Board. *Id.*

The district court found,

> In this case, the Court concludes the reasonableness of the Board's rezoning, in light of the "agricultural buffer," is open to a fair difference of opinion. Reasonable minds, when presented with the Dallas County Zoning Ordinance and the complaints from the surrounding landowners, could conclude that the preservation of an "agricultural buffer" was not required by the Board. As such, the Court shall not substitute its decision for that of the Board's and Baltimore's Writ of Certiorari must be denied on this ground.

Although the requirement for the agricultural barrier was set out in 1970, there was no evidence the barrier was ever put in place. In addition, there were no complaints about the lack of an agricultural barrier for more than fifty years. The complaints arose when Alternate Route sought to rezone the entirety of its property to light industrial. The Planning and Zoning Commission found the 150-foot agricultural buffer area was "excessive and does little to minimize adverse impacts." Furthermore, Alternate Route installed a six-foot fence in the area where the agricultural barrier would have been situated.

When the reasonableness of the Board's decision is fairly debatable, as it is here, we will not substitute our judgment for that of the Board. *See id.* We affirm the decision of the district court.

**AFFIRMED.**